**Dwayne ADAMSON d/b/a Central Medical Company, Appellant,**

v.

**C.G. HARRIS, Respondent.**

**No. WD 38550.**

Missouri Court of Appeals, Western District.

March 17, 1987.

Patrick Woodley, Warsaw, for appellant.

Larry M. Burditt, Warsaw, for respondent.

Before TURNAGE, P.J., and SHANGLER and GAITAN, JJ.

TURNAGE, Presiding Judge.

Dwayne Adamson, d/b/a Central Medical Company, filed this suit in order to register a judgment he obtained against C.G. Harris in the State of Kansas. Harris answers Adamson's petition with the defense that the Kansas Court lacked personal jurisdiction over him. The trial court entered judgment for Harris and refused registration.

Adamson appeals, arguing that Harris waived any personal jurisdiction objection by filing a letter with the Kansas court.

Reversed and remanded.

After he was served with process in the Kansas action and the time for filing a responsive pleading had expired, Harris sent the following letter to the Kansas judge:

83L7634

Gentlemen,

Concerning the "TENS" unit *"purchased"* from Central Medical Company I submit the following.

I have a contract that states this unit in question was to have a $600.00 retail value. I was told by a Central Medical employee that the rent is applied to the purchase price, (otherwise I would have paid for it on delivery) also I *never* once talked to a Mr. Dwayne Anderson concerning this unit until long after his employees explained the unit price, rental, operation, and delivery.

Months after delivery Mr. Anderson decided to increase the price to $880.00 and only the *first* months rent being applied toward purchase (even though enclosed copy of letter from his attorney says they now allow two months). Mr. Anderson also stated that insurance companies only pay one months rental on these units (see enclosed statement from Central Medical dated 11 Feb. 83), and I checked with State Farm Insurance claim office in Mission Kansas and found that they had paid Central Medical the full 600.00 for the unit (see enclosed "payment transmittal" from State Farm). In Mr. Anderson's petition it states the unit must be returned unless a prescription from my physician is obtained, see enclosed statement from Dr. Artz, he recommended using it as needed. And Mr. Anderson knows this, otherwise why did he accept payments from State Farm Insurance until the unit was paid for?? Why did he change the price from $600.00 to 880.00?? Why did his employee tell me if unit was rented the rent is applied toward purchase?? Why did Mr. Anderson say (months later) that insur-

ance companies only pay 1 months rent on these units??—And he was being paid for the unit by State Farm. Why did he tell his attorney that the apply *two* months rental towards purchase??

I can not be in Wichita Kansas on 9 April 84, as I don't have the funds since I can't return to my employment. I would like to get the results of this double-dip claim Mr. Anderson is attempting to obtain so that I can appeal it if I don't like the results.

Thank you
C.G. Harris
R 3N Box 107H
Warsaw, MO 65355

Harris also attached correspondence and other evidence to his letter, with his notations in the margins. After the letter was filed, the Kansas court entered a default judgment against Harris.

Adamson first argues that even if the Kansas court lacked jurisdiction over the person of Harris, lack of personal jurisdiction would not invalidate his judgment.

■ Adamson has proceeded to register his judgment under § 511.760, RSMo 1986. The only judgments that can be registered under § 511.760 are those entitled to full faith and credit. § 511.760.1.

■ A judgment is entitled to full faith and credit only if the court rendering it had personal jurisdiction over the defendant. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) ("A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere ... Due process requires that the defendant ... be subject to the personal jurisdiction of the court ..."); E. Scoles and P. Hay, Conflict of Laws § 24.14 (1984); *see* Restatement (Second) of Conflict of Laws § 92 (1971).[1]

■ The question of whether the rendering court had personal jurisdiction so as to entitle the judgment to full faith and credit is governed in the first instance by the

---

**1.** Of course, if the jurisdictional question was litigated in the rendering court, the issue may be res judicata in later proceedings. *Durfee v.* *Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963).

federal law of due process. *See Woodson,* 444 U.S. at 292, 100 S.Ct. at 564; Scoles & Hay, *supra,* at § 24.12 fn. 5.

■ Even if the rendering court's exercise of jurisdiction was permissible under the due process clause, in order to be entitled to full faith and credit, it must also be valid under the state law of the rendering court. *Boyles v. Boyles,* 308 N.C. 488, 302 S.E.2d 790, 793 (1983); Restatement (Second) of Conflicts of Law § 92, Comment j. and § 105, Comment a.

■ Thus, if the rendering court's exercise of jurisdiction was invalid either under the federal law of due process or the rendering court's state law, the resulting judgment cannot be registered under § 511.760.

This court is of the opinion that under federal and Kansas law, Harris' letter to the court was sufficient to warrant the Kansas court's exercise of jurisdiction over him.

Under federal constitutional law, a court may exercise personal jurisdiction over a defendant who has entered an appearance before it. *See Rauch v. Day & Night Manufacturing, Corp.,* 576 F.2d 697, 700[2] (6th Cir.1978).[2]

■ A party enters an appearance in an action when he "takes any part in the action," Restatement (Second) of Conflict of Laws § 33, Comment b, or seeks "to utilize the machinery of the court in some affirmative way to serve that party's ends in the resolution of the dispute." Scoles & Hay, *supra,* at § 8.14. Courts have differed on the question of whether a letter to the court would constitute an appearance, so as to waive jurisdictional defenses. *See generally, Oppenheim v. Katz,* 81 A.D.2d 145, 439 N.Y.S.2d 941 (1981), *aff'd* 449 N.Y.

S.2d 29, 433 N.E.2d 1277, 55 N.Y.2d 904 (1982). *See Collins v. Collins,* 175 Pa.Super. 214, 103 A.2d 494, 497, *cert. denied,* 348 U.S. 824, 75 S.Ct. 38, 99 L.Ed.2d 650 (1954). The courts have been generally willing to characterize letters and other analogous communications as "appearances" in the context of deciding whether a defendant has entered an appearance so as to be entitled to notice prior to a default hearing. *Hood v. Haynes,* 7 Kan.App.2d 591, 644 P.2d 1371 (1982). *See generally* Annot., 27 A.L.R.Fed. 620 (1976) and Annot., 73 A.L.R.3d 1250 (1976). Despite the existence of some case law to the contrary, *see e.g., Collins,* it would appear that when a litigant has addressed the court to contest the merits of his case, as Harris did here, he must be said to have done so in order to obtain relief from the court by a favorable resolution of his case. When the litigant indicates his willingness to accept a favorable adjudication of his case and attempts to influence a tribunal to enter such a resolution, it seems appropriate to say he has entered his appearance before that tribunal. Thus, the Kansas court's exercise of jurisdiction over Harris did not offend due process.

■ The Kansas court's exercise of jurisdiction over Harris also comports with Kansas law. Under Kan.Stat.Ann. § 60–212 (1983) (modeled on F.R.Civ.P. 12, *Haley v. Hershberger,* 207 Kan. 459, 485 P.2d 1321, 1327 (1971)), the common law distinction between general appearances (waiving jurisdiction) and special appearances (preserving jurisdictional objections) is obsolete. *See* footnote 2, *supra.* Under the current statute, the defense of lack of personal jurisdiction is waived only when the defendant fails to raise the defense by motion or answer. *Haley,* 485 P.2d at 1326.[3]

---

**2.** Most states historically required a general appearance rather than a special appearance before finding a waiver of jurisdictional defenses; however, even a special appearance is sufficient to effect such a waiver under federal constitutional law. Restatement (Second) of Conflict of Laws § 33, Comment e. Thus, for purposes of this due process discussion, it is not necessary to distinguish between general and special appearances. For purposes of determining what constitutes a waiver of jurisdiction under Kan-

sas law, the Kansas statutes on civil procedure have superceded the old common law distinction between general and special appearances. *Small v. Small,* 195 Kan. 531, 407 P.2d 491, 496 (1965). Cf. *State ex rel. White v. Marsh,* 646 S.W.2d 357, 361 (Mo. banc 1983) (same principle under Missouri law).

**3.** Failure to raise the defense of lack of jurisdiction by motion or answer cannot constitute a waiver of the defense where the defendant does not appear and the jurisdictional defect consti-

A letter may serve as a motion in some circumstances. *Bumpus v. Uniroyal Tire Co.*, 392 F.Supp. 1405, 1406 (E.D.Pa.1975). Though Harris' letter did not fulfill the formal requirements of either pleading or motion under Kan.Stat.Ann. § 60–210 (1983), it did contain the style number of his case and his response to the merits of the allegations against him. The letter appears to have been in the nature of a lay person's answer to the petition. The fact that the Kansas court entered a default against Harris does not mean that the Kansas court considered Harris' letter a nullity; since the letter was filed after the time for an answer, Harris might still be considered in default. § 60–212(a). Since Harris filed a document in the nature of an answer to the petition, it does not lie in his mouth to argue that he failed to comply with procedural requirements under the Kansas statutes on civil procedure. Therefore, Harris waived any personal jurisdictional defense otherwise available to him.[4]

The record on appeal does not disclose whether Harris was notified before the default hearing, pursuant to Kan.Stat. Ann. § 60–255 (1983). Research reveals no cases determining whether failure to give such notice renders a judgment void and subject to collateral attack under Kansas law. However, under the similar F.R. Civ.P. 55 (b)(2), that question must be considered "in the light of surrounding circumstances." 7 J. Moore, Moore's Federal Practice ¶ 60.25[2] at 60–238 (1985). Failure to give notice, under some circumstances, may be a failure of due process, which renders the default judgment void. *Planet Corp. v. Sullivan*, 702 F.2d 123, 125–26 fn. 2 (7th Cir.1983). Since this court has no record whatsoever regarding whether notice was given, and if not, what the circumstances were, this case will be remanded for development of such a record. In the event Harris does not establish Adamson failed to give the requisite notice under circumstances constituting a failure of due process, the judgment will be entitled to registration.

The judgment is reversed and this cause is remanded with instructions to allow amendment of Harris' pleadings to raise any defense he may have based on failure to give him notice of default prior to entry of the judgment.

All concur.

---

tutes a failure of due process. *Crouch v. Crouch*, 641 S.W.2d 86 (Mo. banc 1982); 5 C. Wright and A. Miller, Federal Practice and Procedure § 1392 at pp. 377–378 fn. 45.2 (1986 Cum.Supp.). Indeed, if the rules were read to effect a waiver in such circumstances, the jurisdictional defect could simply be raised on collateral attack. *Id.* at p. 378.

4. On similar facts, the New York Appellate Division held that the defendant's letter preserved his jurisdiction objection. *Oppenheim v. Katz*, 439 N.Y.S.2d at 943. This court is simply not persuaded that Harris' letter in any way notified the Kansas court of any objection to its jurisdiction.