**ARTEC DISTRIBUTING, INC., Plaintiff,**

**v.**

**VIDEO PLAYBACK, INC. and Myron Kozak, Individually and Mary Kozak, Individually, Defendants.**

**No. 2:91–CV–336.**

United States District Court, D. Vermont.

Sept. 9, 1992.

Charles E. Finberg, Paul, Frank & Collins, Burlington, Vt., for plaintiff.

David M. Hyman, Burak & Anderson, Burlington, Vt., for defendants.

OPINION AND ORDER

PARKER, Chief Judge.

On November 4, 1991, defendants, Video Playback, Inc. ("VPI") and Mary and Myron Kozak removed this action to federal court from Chittenden Superior Court pursuant to 28 U.S.C. §§ 1332 and 1446. On November 20, 1991, defendants moved to

dismiss the action for lack of personal jurisdiction, or in the alternative, to transfer venue to the District of New Jersey. Plaintiff, Artec Distributing, Inc. ("Artec") opposes both motions.

### FACTS

The relevant facts for purposes of disposing of the instant motion are not in dispute. Plaintiff, a Vermont corporation, is in the business of marketing video tapes to retail outlets throughout the country. Defendant VPI is a New Jersey corporation. Defendant Mary Kozak was at the time of the events alleged by plaintiff the President and Secretary of VPI, and Myron Kozak was its majority shareholder. Both Kozaks are New Jersey residents, who have never been to Vermont, nor conducted any business in this state. Artec has named all three defendants in its Complaint, apparently under the theory that the court should "pierce the corporate veil" in holding the individual defendants liable. *See* Complaint, attached to Notice of Removal of Action from State Court to Federal District Court (Paper # 1 in the Court's Docket) ¶ 28.[1] To the extent that the plaintiff could possibly be successful in effecting liability of the individual shareholders,[2] the analysis contained herein with respect to VPI applies likewise to the Kozaks as individual defendants.[3]

1. The Complaint alleges:
   The actions of defendants Myron Kozak and Mary Kozak, or each of them, in representing in their credit application to plaintiff that they were the owners of a number of video distribution stores, when done so with the knowledge that they would be willing to bankrupt defendant Playback to avoid the collection efforts of plaintiff, is an intentional misrepresentation of fact affecting the essence of the transactions between plaintiff and defendants. The misrepresentation was known to the defendants when made and was known to be false by the defendants. Plaintiff was not aware of the misrepresentation at the time and relied upon it to its detriment. Defendants' actions, taken with wanton and reckless disregard of plaintiff's rights, constitute fraud.

2. Such a theory could be appropriate under the alleged facts of this case, since "[t]he focus of piercing the corporate veil is the limited liability afforded to a corporation, and '[l]iability there-

Defendants indicate that in 1987, Artec first solicited them in New Jersey, and by interstate telephone and mail. Specifically, an Artec employee, Harvey Greenstein—without any prior solicitation by defendants or their agents—visited defendant Myron Kozak in an attempt to sell Artec's products to VPI, following Greenstein's attempts to solicit VPI's business by telephone for several months. Plaintiff does not deny that it purposefully sought out defendants' business, but responds that defendants had a significant relationship with Vermont by making regular purchases of plaintiff's video products for nearly four years. Plaintiff submits evidence that during that period, defendants mailed correspondence and checks, and returned video tapes, to Artec's Shelburne, Vermont address. Plaintiff also claims that defendants made several telephone calls to its Vermont headquarters and submitted a credit application to the Vermont address.

### DISCUSSION

**I. *Lack of Personal Jurisdiction over Defendants***

According to Vermont's long-arm statute, 12 V.S.A. § 913(b)[4], the court may "exercise jurisdiction over defendants to the outer limits of the due process clause." *Blue Compass Corp. v. Polish Masters of*

fore may be predicated either upon a showing of fraud or upon complete control by the dominating corporation that leads to a wrong against third parties.' " *F.D.I.C. v. Colonial Realty Co.*, 966 F.2d 57, 61 (2d Cir.1992) (quoting *William Passalacqua Builders v. Resnick Developers South, Inc.*, 933 F.2d 131, 136 (2d Cir.1991)).

3. For that reason, as well as the fact that the Motion to Dismiss was brought by all three defendants, references in this Opinion to "defendants" apply to all three named defendants.

4. Section 913(b) provides:
   Upon the service [of process on a party outside the state], and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.

*Am.,* 777 F.Supp. 4, 5 (D.Vt.1991) (citation omitted); *see also Northern Aircraft v. Reed,* 154 Vt. 36, 40, 572 A.2d 1382 (1990) (Section 913(b) "reflects a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause").

■ Under the Due Process Clause, a court may assert personal jurisdiction only where the defendant has certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Quill Corp. v. North Dakota,* ── U.S. ──, ──, 112 S.Ct. 1904, 1910, 119 L.Ed.2d 91 (1992) (quoting *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting, in turn, *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). Those contacts with a state must be such that a defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

The case law is clear that where—as in the instant case—a defendant does not actively initiate contacts in a state, a court does not ordinarily exercise jurisdiction over that defendant, unless there is some other evidence of minimum contacts with the forum state. For example, in *World–Wide Volkswagen,* the plaintiff purchased an automobile from a New York dealer and was involved in an accident while driving in Oklahoma. The dealership's contacts in Oklahoma were held insufficient for it to be sued in that state. While the Court recognized that it was certainly foreseeable that cars sold by the New York dealership would be driven to another state, "mere

'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" 444 U.S. at 298, 100 S.Ct. at 567 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)); *cf. Burger King v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (Personal jurisdiction existed over defendant whose efforts were "purposefully directed" toward residents of forum state through defendant's own initiation; defendant could not, however, be haled into jurisdiction solely as a result of "random", "fortuitous", or "attenuated" contacts).

■ In Vermont, the oft-quoted standard employed by the state Supreme Court in determining whether personal jurisdiction exists is whether a defendant has committed an "[i]ntentional and affirmative action" constituting "active planned participation in the Vermont market". *See e.g., Pasquale v. Genovese,* 136 Vt. 417, 421, 392 A.2d 395 (1978). In that connection the Court looks to whether the defendant has engaged in a "general course of conduct as purposefully directed toward Vermont and as inevitably affecting persons in this state." *Id.* at 419, 392 A.2d 395.

For example, in *Northern Aircraft v. Reed,* 154 Vt. 36, 572 A.2d 1382 (1990), defendant, a resident of Kansas, telephoned the president of plaintiff Northern Aircraft, Inc., a Vermont corporation, and requested the company's assistance in selling an aircraft owned by defendant. The Vermont Supreme Court found that defendant had established minimum contacts with Vermont, because of his role in initiating contact with plaintiff and purposefully seeking out and directing his activity towards a Vermont corporation.[5] *Id.* at 43,

---

5. The Court distinguished the facts before it from both *Robinson v. International Indus. Ltd.,* 139 Vt. 444, 430 A.2d 457 (1981) and *Carothers v. Vogeler,* 148 Vt. 316, 532 A.2d 580 (1987).

In *Robinson,* a Vermont resident ordered goods from a supplier in Florida who in turn ordered the goods from the manufacturer in Tennessee. The Florida supplier requested that the goods be shipped directly to Vermont by common carrier. Aside from this transaction,

the manufacturer had no other contact with Vermont. The Court thus found there was no minimum contact with Vermont by the Tennessee manufacturer, because title to the goods passed in Tennessee and the goods were shipped to Vermont under the direction of their owner. 139 Vt. at 446, 430 A.2d 457.

Likewise, in *Carothers,* the plaintiff brought suit in a Vermont court seeking to domesticate an Ohio judgment. The Court concluded that

572 A.2d 1382;[6] *see also Blue Compass Corp. v. Polish Masters of Am.*, 777 F.Supp. 4 (D.Vt.1991) (California defendant who advertised his business in at least one national magazine and obtained one Vermont customer had sufficient contacts with Vermont to support assertion of personal jurisdiction over him pursuant to Vermont's long-arm statute); *Sollinger v. Nasco Int'l, Inc.*, 655 F.Supp. 1385 (D.Vt.1987) (Jurisdiction asserted over foreign defendant who mailed its catalogs into Vermont to solicit sales, since it "clearly expect[ed] to do business with Vermont residents"); *cf. O'Brien v. Comstock Foods, Inc.*, 123 Vt. 461, 464, 194 A.2d 568 (1963) (Vermont court could not exercise jurisdiction over nonresident manufacturer of can of beans in which plaintiff found piece of glass where defendant did not purposefully perform any act within Vermont; merely placing product into "stream of commerce" insufficient).[7]

■ Based on the facts of the instant case, this court does not have personal jurisdiction over the New Jersey defendants. There is no evidence that VPI or the Kozaks affirmatively sought to do business with a Vermont corporation. Rather, in contrast to the defendant in *Northern Aircraft, supra*, they were solicited by the Vermont plaintiff. VPI did nothing more

the defendant's only contact with Ohio was that he had advertised his antique automobile in a nationally circulated publication. Plaintiff came to Vermont to inspect, purchase and take delivery of the vehicle. The defendant never established requisite minimum contacts with Ohio because the fact that the only transaction between the individuals occurred in Vermont did not "make it reasonable for him to conduct his defense in a foreign state." 148 Vt. at 319, 532 A.2d 580.

6. The Court found the same result in a noncommercial context in *Cameron v. Burke*, 153 Vt. 565, 572 A.2d 1361 (1990), a contract action between two individuals who had shared an intimate relationship. During the course of the relationship, plaintiff had provided defendant funds, which plaintiff alleged defendant agreed to repay. The Court found that the trial court had properly exercised personal jurisdiction over defendant, since: (1) the oral promise to repay the loans occurred in Vermont, (2) substantial portions of the oral agreement were executed in Vermont, and (3) defendant's residence, the sale of which was to trigger her duty

than purchase merchandise from and make returns to Artec in Vermont over the course of a number of years; plaintiffs sold outside of the forum state, rather than defendants selling into it. Furthermore, the simple fact of payments from defendant to plaintiff and correspondence between the parties does not rise to the level of minimum contacts required for personal jurisdiction, since defendants never actively sought out or initiated the relationship. Consequently, the defendants' mere purchase from and occasional return of products to the Vermont plaintiff does not establish minimum contacts sufficient for this court to exercise personal jurisdiction over them.

## II. Transfer of Venue

Title 28 U.S.C. § 1404(a) permits transfer of an action to another district or division on the basis of "convenience [to] parties and witnesses, [and in] the interests of justice." However, because this court does not have jurisdiction over the parties, it cannot rule on the motion to transfer venue.

## CONCLUSION

Defendants' motion to Dismiss for Lack of Personal Jurisdiction (Paper # 5) is here-

to repay the loans, was located in Vermont. *Id.* at 570, 572 A.2d 1361.

7. Plaintiff's citation to *Artec Dist., Inc. v. Wellesley Video, Inc.*, No. 1458–91 (Chit.Super.Ct. Oct. 2, 1991) is inapposite. It is true that "the highest court of a state has the final word on the meaning of state law," and that where only a lower state court has ruled on an issue, its construction is binding on a federal court in the absence of "other persuasive data that the highest court of the state would decide otherwise." *Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 84 (2d Cir.1991); *see also Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 132 (2d Cir.1984) ("We recognize that the decision of an intermediate state court on a question of state law is binding on us unless we find persuasive evidence that the highest state court would reach a different conclusion"). This court is persuaded—based on the analysis of the Vermont Supreme Court decisions provided herein—that the state Supreme Court would find contrary to and thus reverse the Superior Court decision.

by GRANTED. This court refrains from ruling on the Motion to Transfer Venue. The case is DISMISSED.